**Venancia FERRER, et al., Plaintiffs, Appellees,**

v.

**Carmen Sonia ZAYAS, etc., et al., Defendants, Appellants.**

**No. 89–1853.**

United States Court of Appeals, First Circuit.

Heard Aug. 1, 1990.

Decided Sept. 17, 1990.

---

**310**

Vannessa Ramirez, Asst. Sol. Gen., Dept. of Justice, with whom Jorge E. Perez Diaz, Sol. Gen., was on brief, for defendants, appellants.

Frank Rodriguez Garcia with whom Francisco J. Rodriguez Juarbe was on brief, for plaintiffs, appellees.

Before CAMPBELL, Circuit Judge, BOWNES, Senior Circuit Judge, and SELYA, Circuit Judge.

LEVIN H. CAMPBELL, Circuit Judge.

Defendants-appellants Secretary Carmen Sonia Zayas ("Zayas") and Regional Director Carmen Rodriguez ("Rodriguez") appeal from the order of the United States District Court for the District of Puerto Rico denying their motion for judgment notwithstanding the verdict. Plaintiff-appellees are nineteen employees of the Puerto Rico Department of Social Services ("D.S.S.") who brought suit against D.S.S. Secretary Zayas and various Regional Directors pursuant to, *inter alia,* 42 U.S.C. § 1983 (1982), alleging that they were dismissed on the basis of their political affiliation in violation of their First Amendment freedoms of association and expression.

The only issues raised on appeal are, as to Zayas, whether the evidence was sufficient to support the jury's findings in favor of the plaintiffs, and as to Rodriguez, whether the verdict against her in the case of one plaintiff was sustainable.[1] Defendants Zayas and Rodriguez make two arguments: *First,* the evidence in the record did not make out a case that Secretary Zayas, as distinguished from the Regional Directors, personally infringed any of the nineteen plaintiffs' constitutional rights; and *second,* in the particular case of plaintiff Nydia Valles–Amaro ("Valles–Amaro"),[2] the evidence in the record was insufficient to support the jury's verdict that

---

1. D.S.S. former Deputy Secretary for Personnel and Human Resources Luis Pastrana–Torres and Regional Directors Confesor Acevedo, Rosa Estrada, Wilfredo Vega–Garcia, and Martin Giron–Dominicci have not contested on appeal the legality of, and evidentiary basis for, the jury's

findings against them. Accordingly, we affirm the judgment as to them.

2. Defendants refer in their brief to "Valles–Amaro" as "Baez–Amaro." The record makes clear that these names refer to one person.

Regional Director Rodriguez (and Secretary Zayas) infringed her constitutional rights. We reject both of these arguments and affirm.

The standard applicable to reviewing the district court's denial of a defendant's motion for judgment notwithstanding the verdict is deferential: "[W]e must examine the evidence in the light most favorable to the plaintiff and determine whether there are facts and inferences reasonably drawn from those facts which lead to but one conclusion—that there is a total failure of evidence to prove plaintiff's case." *Mayo v. Schooner Capital Corp.*, 825 F.2d 566, 568 (1st Cir.1987) (*quoting Fact Concerts, Inc. v. City of Newport*, 626 F.2d 1060, 1064 (1st Cir.1980)), *vacated on other grounds*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). After drawing all rational inferences in favor of the plaintiff, if any reasonable disagreement is possible, judgment n.o.v. is inappropriate. *Borras v. Sea-land Service, Inc.*, 586 F.2d 881, 885 (1st Cir.1978) (*quoting Dumas v. MacLean*, 404 F.2d 1062, 1064 (1st Cir.1968)). Nevertheless, the plaintiff is not entitled to inferences based on speculation and conjecture. *Jorgensen v. Massachusetts Port Authority*, 905 F.2d 515, 522 (1st Cir.1990).

■ In order to establish a case of patronage dismissal, plaintiffs must demonstrate that their conduct was constitutionally protected and that this conduct was a substantial or motivating factor underlying the decision to dismiss them. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 270, 97 S.Ct. 555, 566, 50 L.Ed.2d 450 (1977); *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Notwithstanding plaintiffs' showing that protected conduct motivated the decision to dismiss, the defendants may prevail upon establishing by a preponderance of the evidence sufficient alternate grounds such that plaintiffs would have been dismissed even absent the protected conduct. *Mt. Healthy City*

*School Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Givhan v. Western Line Consol. School Dist.*, 439 U.S. 410, 416, 99 S.Ct. 693, 697, 58 L.Ed.2d 619 (1978); *Kauffman v. Puerto Rico Telephone Co.*, 841 F.2d 1169 (1st Cir.1988); *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49 (1st Cir. 1990).[3]

## Discussion

■ Plaintiffs held various non-tenured D.S.S. positions for periods of six to twelve years—all had served since prior to the victory of the Popular Democratic Party ("P.D.P.") over the New Progressive Party ("N.P.P.") in the November, 1984 Puerto Rican gubernatorial elections. Plaintiffs were all affiliated with the N.P.P. They were scattered through the D.S.S. Food Stamps and Home Orientation programs as well as D.S.S. Child Care Centers in eleven communities in the Mayaguez, Aguadilla, Arecibo, Ponce and Guayama regions. The parties stipulated that all plaintiffs had been evaluated and the evaluations showed that all plaintiffs performed their duties well. The defendant Regional Directors argued at trial that the decision to dismiss the plaintiffs was based on a finding that their programs and offices were overstaffed. However, there was evidence that P.D.P. employees hired and paid through the Right to Work Administration were later placed at the D.S.S. to perform the duties of some of the dismissed plaintiffs. One plaintiff was terminated on February 28, 1986, thirteen on June 30, 1986, and five on July 18, 1986. All received virtually identical notice that their appointments would not be renewed. The letters were signed by Luis Pastrana, the then-D.S.S. Deputy Secretary for Personnel and Human Resources, and transmitted over the signature of the appropriate Regional Director. Secretary Zayas was the nominating authority responsible for appointments and dismissals at the D.S.S. P.R. Laws Ann. tit. 3, § 211c (1982). She may delegate that power to her subordinates, how-

---

**3.** Defendants' contention that the plaintiff bears a burden to show that termination would not

have occurred "but for" the protected conduct is incorrect.

ever, and authorize subdelegation. P.R. Laws Ann. tit. 3, § 211h (1982).

■ The district court emphasized the following evidence in support of its order denying Zayas' motion for a directed verdict: [4]

> There was uncontradicted testimony that there was a channel of communications between the Regional Offices and the Secretary's headquarters; that plaintiffs' political affiliation was well known, in some cases notoriously known; that it was the Secretary's assistant who issued the termination letters; that at the central offices of the Department of Social Services the nominating authority was aware of the dismissals throughout the Regions; that on one occasion the Secretary of Social Services visited the Patillas office of the Guayama Region and was informed of the political affiliation of plaintiff Valles Amaro.

Zayas does not say that these findings are unsupported but rather maintains that the evidence they relate is insufficient, as a matter of law, to enable a jury to infer that she herself had direct personal knowledge of the plaintiffs' political affiliations, other than Valles–Amaro's. We disagree. Zayas concedes in her brief that the Secretary relies on "communications originating at the regional level for essential information and feedback." The record provides evidence from which the jury could infer that plaintiffs' political affiliation was generally known. Zayas does not contest that she was in communication with the Regional Directors, who have not argued on appeal that the jury erred in finding that they dismissed the plaintiffs due to their N.P.P. affiliation, nor does Zayas deny that it was her assistant who prepared the dismissal letters. Nor does Zayas dispute that she knew of the dismissals when they occurred. The fact that the nineteen plaintiffs were all N.P.P. sympathizers and that their dismissals all occurred around the same time is suggestive of central coordination. Fi-

nally, Regional Director Estrada testified that Zayas or her delegate would have prepared the proposal to locate employees from the Right to Work Administration in the D.S.S. Plaintiffs testified that these employees were P.D.P.–affiliated and performed functions which the dismissed plaintiffs had formerly performed. We cannot say that the jury was irrational in inferring from all the circumstances that Zayas, who by law held ultimate responsibility for employment decisions in the D.S.S., knew about and acquiesced in the decision to dismiss the plaintiffs due to their political affiliation. Direct as opposed to circumstantial proof of discrimination is not required; "Circumstantial evidence can be probative as direct evidence." *Gierbolini–Colon v. Aponte–Roque*, 848 F.2d 331, 335 (1st Cir.1988). *See also Village of Arlington Heights*, 429 U.S. at 266, 97 S.Ct. at 564.

■ We turn now to defendants Zayas's and Rodriguez's argument that the evidence was insufficient to make out a case of discriminatory motive in the dismissal of Valles–Amaro. We believe such a case was made. Valles–Amaro had been a clerk at the Patillas Child Care Center since 1980, and received a termination letter virtually identical to that which twelve other plaintiffs received, all dated June 16, 1986. Valles–Amaro, like these others, was an N.P.P. affiliate while those dismissing her were P.D.P. sympathizers. From a stipulation and Valles–Amaro's own testimony, the jury could have found that Valles–Amaro performed her duties very well and had never been reprimanded. Also, Valles–Amaro testified that on an April, 1986 visit to the Patillas Child Care Center, the Patillas Mayor introduced Valles–Amaro to Rodriguez and Zayas as "a P.N.P. but that I was good." We think this evidence would have entitled the jury to conclude that political discrimination was a motivating factor in Valles–Amaro's dismissal.

Defendants further argue that even if plaintiffs presented a sufficient case to

---

**4.** Zayas moved for a directed verdict at the close of plaintiffs' case. The district court reserved

judgment on the motion pending the verdict.

warrant the jury's finding of discrimination, they conclusively established, as a matter of law, that Valles–Amaro would have been dismissed in any event, regardless of her political affiliation. *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576. Zayas and Rodriguez point to uncontested evidence that, after unsuccessful attempts to relocate to more suitable facilities, the Patillas Child Care Center was closed from July, 1986 until October, 1987. This proves, they contend, that Valles–Amaro would necessarily have been dismissed because her job had ceased to exist.

While this argument is not without some force, we are unable to say that a reasonable jury had no choice but to determine that Valles–Amaro would have been terminated as a result of the Center's closing. Plaintiffs emphasize, and the record supports, that Valles–Amaro was the only transitory employee dismissed in Patillas. Defendants made no showing that other employees at the Center were dismissed, nor did they provide reasons why other employees were not dismissed.[5] It was the defendants' burden, once plaintiffs demonstrated that discrimination was a motivating factor in the dismissal, to prove that plaintiff would have been discharged in any event. The jury may have reasoned that Valles–Amaro would have been retained as a clerk at a nearby Arroyo D.S.S. location or in another capacity had she been a member of the incumbent political party. The jury was entitled to conclude that defendants had not established their *Mt. Healthy* defense in these circumstances.

*Affirmed.   Costs to appellees.*

---

**5.** Regional Director Carmen Rodriguez testified on direct examination regarding the Patillas Child Care Center as follows:

   Q:  In June '86 when that center closed how many transitory employees were there?

A:  There were transitory jobs.
Q:  And what happened to them?
A:  The teachers and the teachers assistants. The teachers [sic] got a job in the Department of Public Education and quit her job.