Juan E. **MARTINEZ–BAEZ,**
et al. **Plaintiffs**

v.

Cesar **REY–HERNANDEZ,**
et al. **Defendants**

No. Civ. 02–1503(SEC).

United States District Court,
D. Puerto Rico.

June 14, 2005.

Hector J. Quijano–Borges, Mendez Mendez & Quijano Borges, Hato Rey, PR, Monique Guillemard–Noble, Andres Guillemard–Noble, Nachman & Guillemard, Rene Pinto–Lugo, Pinto–Lugo, Oliveras & Ortiz, PSC, San Juan, PR, for Plaintiffs.

Mariana Negron–Vargas, Commonwealth Department of Justice Federal Litigation Division, Tessie Leal–Garabis, Quinones & Sanchez, PSC, Gary H. Montilla–Brogan, Humberto Guzman–Rodriguez, San Juan, PR, Carlos E. Lopez–Lopez, Zuleika Llovet–Zurinaga, Luisselle Quinones–Maldonado, Marie L. Cortes–Cortes, Llovet Zurinaga & Lopez, PSC, Hato Rey, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Before the Court is Defendants' motion for summary judgment (Docket # 70).[1] Plaintiffs have opposed Defendants' request (Docket # 86). After reviewing the parties' filings and the applicable law, for the reasons set herein, Defendants' motion will be **GRANTED in part and DENIED in part.**

### Factual Background

Plaintiffs, Juan E. Martínez–Baez, Norma G. Santana–Irizarry, and Nilsa Y. Vázquez, formerly occupied the transitory positions of Administrative Law Judges for Special Education with the Department of Education ("DE"). They each enjoyed one year contracts which were renewed yearly until 2001. Plaintiffs allege that the nonrenewal of their contracts was due to their affiliation to the New Progressive Party ("NPP"). Thus, they have brought suit against Defendants Cesar Rey–Hernández,

Secretary of the DE; Lizette Pillich–Otero,[2] Director of Human Resources at the DE; Carmen I. Motta–Montañez, Director of the Legal Division of the DE; Licely Falcón–del Toro, Auxiliary Secretary of Special Education at the DE; and the DE pursuant to 42 U.S.C. §§ 1983, 1985(3), and 1988 (Docket # 1).

### Standard of Review

Fed.R.Civ.P. 56(b) provides that: "A party against whom a claim … is asserted … may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986); *NASCO, Inc. v. Pub. Storage, Inc.*, 29 F.3d 28 (1st Cir.1994). "The principal judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists." Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure: Civil 3d* § 2725, p. 401.

In this regard, the First Circuit Court of Appeals has noted that for a dispute to be "genuine," there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the non-moving party. *U.S. v. One Parcel of Real*

---

1. Defendants have filed their request for summary disposition of Plaintiffs' claims in both their official and individual capacities.

2. On October 12, 2004 Plaintiffs voluntarily desisted of their action against Co-defendant Pillich–Otero (Docket # 55). The Court proceeded to enter Partial Judgment on November 1, 2004 (Docket # 61).

*Prop.,* 960 F.2d 200, 204 (1st Cir.1992); *see also Boston Athletic Assn. v. Sullivan,* 867 F.2d 22, 24 (1st Cir.1989); *Medina–Muñoz v. R.J. Reynolds Tobacco,* 896 F.2d 5, 8 (1st Cir.1990) ("[a] 'genuine' issue is one that must be decided at trial because the evidence, viewed in the light most favorable to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party.") (citations omitted).

By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Gov't Dev. Bank of P.R.,* 27 F.3d 746, 748 (1st Cir.1994). "A fact is material if it tends to resolve any of the issues that have been properly raised by the parties." Wright, Miller & Kane, *supra,* § 2725 at p. 419. "Not every genuine factual conflict necessitates a trial. It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." *Martinez v. Colon,* 54 F.3d 980, 983–84 (1st Cir.1995).

In addition, when determining whether to grant summary judgment, the Court may not weigh the evidence. *Casas Office Machs., Inc. v. Mita Copystar Am., Inc.,* 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (*citing Greenburg v. P.R. Mar. Shipping Auth.,* 835 F.2d 932, 936 (1st Cir.1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machs.,* 42 F.3d at 684.

While the moving party has the burden of initially establishing that there is "an absence of evidence to support the non-moving party's case," *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1984); the nonmovant has a "corresponding obligation to offer the court more than steamy rhetoric and bare conclusions." *Lawton v. State Mut. Life Assurance Co. of Am.,* 101 F.3d 218, 223 (1st Cir.1996). Furthermore, "the nonmovant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trialworthy issue.... Failure to do so allows the summary judgment engine to operate at full throttle." *Id.; see also Kelly v. United States,* 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); *Medina–Munoz,* 896 F.2d at 8, (*quoting Mack v. Great Atl. & Pac. Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.")

Local Rule 56(b), moreover, requires the moving party to file annexed to the motion "a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." Unless the nonmoving party controverts this statement, all the material facts set forth therein "shall be deemed to be admitted." *Id.; Cosme–Rosado v. Serrano–Rodriguez,* 360 F.3d 42 (1st Cir.2004). This is the so-called "anti-ferret rule." *See, e.g., Orbi, S.A. v. Calvesbert & Brown,* 20 F.Supp.2d 289, 291 (D.P.R.1998). While failure to comply with this rule does not automatically warrant the granting of summary judgment, "it launches the nonmovant's case down the road toward an early dismissal."

*Tavarez v. Champion Prods., Inc.,* 903 F.Supp. 268, 270 (D.Puerto Rico 1995).

### Applicable Law and Analysis

Defendants have moved for summary judgment averring that: (1) as contract employees, Plaintiffs do not have a property interest in continued public employment; (2) Plaintiffs have failed to establish a *prima facie* case of political discrimination; (3) Plaintiffs' contracts were not renewed because their performance was inadequate; (4) Defendants, in their personal capacity, are entitled to qualified immunity; (5) Defendants, in their official capacity, are entitled to Eleventh Amendment immunity (Docket # 72). We will address each in natural order, as well as Plaintiffs' opposition thereto, to the extent necessary.

### I. Section 1983

Section 1983 in itself does not confer substantive rights, but provides a venue for vindicating federal rights elsewhere conferred. *See Graham v. M.S. Connor,* 490 U.S. 386, 393–394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In order to establish liability under Section 1983, a plaintiff must first show that "the conduct complained of was committed by a person acting under color of state law." *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 559 (1st Cir.1989); *Saugus v. Voutour,* 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986); *Voutour v. Vitale,* 761 F.2d 812, 819 (1st Cir.1985).

■ Second, a plaintiff must show that the defendant's conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. *See Parratt,* 451 U.S. at 535, 101 S.Ct. 1908; *Gutierrez–Rodriguez,* 882 F.2d at 559. This second prong has two aspects: (1) there must have been an actual deprivation of the plaintiff's federally protected rights; and (2) there must have been a causal connection between the defendant's conduct and the deprivation of the plaintiff's federal rights. *Gutierrez–Rodriguez,* 882 F.2d at 559; *Voutour,* 761 F.2d at 819. In turn, this second element of causal connection requires that the plaintiff establish: (1) for each defendant, that the defendant's own actions deprived the plaintiff of his/her protected rights, *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 n. 58, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Gutierrez–Rodriguez,* 882 F.2d at. 562; *Figueroa v. Aponte–Roque,* 864 F.2d 947, 953 (1st Cir.1989); and (2) that the defendant's conduct was intentional, *Simmons v. Dickhaut,* 804 F.2d 182, 185 (1st Cir.1986), grossly negligent, or amounted to a reckless or callous indifference to the plaintiff's constitutional rights. *See Gutierrez–Rodriguez,* 882 F.2d at 562.

### A. Due Process

■ In their complaint Plaintiffs claimed to have a property interest in their continued employment and that they were divested of their entitlement as a result of political discrimination. In their motion for summary judgment, Defendants rightfully aver that Plaintiffs did not have a property interest in their positions since they were hired on a contractual basis. *See Davila–Aleman v. Feliciano–Melecio,* 992 F.Supp. 91, 96 (D.Puerto Rico 1998)("the renewal of Plaintiffs' contract does not create a property interest in the continued renewal of those contracts"). In their opposition, Plaintiffs apparently concede that they do not have a cognizable claim for due process violations. Thus, instead of opposing Defendants' contention, Plaintiffs request voluntary dismissal

of their due process claims (Docket # 86, p. 2). However, given the stage of the proceedings and Defendants' pending motion for summary judgment, the Court will GRANT Defendants' request for summary judgment on Plaintiffs' due process claim, rather than voluntary dismissal of the same.

## B. Political Discrimination

 Political discrimination restrains freedom of belief and association, core activities protected by the First Amendment. *See Elrod v. Burns,* 427 U.S. 347, 354, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). To prevail on a political discrimination claim against Defendants, Plaintiffs must establish that they: (1) engaged in constitutionally protected conduct; and (2) that this conduct was a substantial or motivating factor in an adverse decision affecting them. *See Mt. Healthy City Sch. Dist. Bd. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Padilla–Garcia v. Rodriguez,* 212 F.3d 69, 74 (1st Cir.2000). To meet this burden, Plaintiffs must show that there is a causal connection linking Defendants' conduct to their political beliefs. *See LaRou v. Ridlon,* 98 F.3d 659, 662 (1st Cir.1996). If Plaintiffs meet this burden, then Defendants have the opportunity to demonstrate, by a preponderance of the evidence, that the alleged adverse actions taken against them would have occurred even in the absence of their protected conduct. *See Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. 568.

 Political discrimination cases carry the implicit, yet obvious requirement that defendants have knowledge of the plaintiff's political affiliation. *See Vazquez–Valentin v. Santiago–Diaz,* 385 F.3d 23 (1st Cir.2004)(reversing a jury verdict for the plaintiff finding that the plaintiff had failed to adduce sufficient evidence for the jury to reasonably infer that the plaintiff's polit-

ical affiliation was a substantial or motivating factor in the adverse employment action). *See also Laskaris v. Thornburgh,* 733 F.2d 260, 265 (3rd Cir.1984)(finding that there was insufficient evidence to show that the defendants knew that the plaintiffs were Democrats).

 It has been well settled that, except for policymaking/confidential positions, all government employees are protected from discharge from their positions on the basis of their political affiliation. *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). This protection is afforded to career employees, trust employees, and independent contractors. *See Guillemard Gionorio v. Contreras Gomez,* 322 F.Supp.2d 153, 161 (D.Puerto Rico 2004)(*citing O'Hare Truck Serv., Inc. v. City of Northlake,* 518 U.S. 712, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996)("protections generally afforded to public employees against being discharged for refusing to support political party or its candidates also extend to independent contractors")). Furthermore, the law is clear in that said protection also extends to public transitory employees. *Nieves–Villanueva v. Soto–Rivera,* 133 F.3d 92, 98 (1st Cir.1997)(stating that "the fact that a transitory employee does not have a reasonable expectation of renewal in his or her employment that would require due process protections does not defeat a First Amendment claim"); *Figueroa v. Aponte–Roque,* 864 F.2d 947, 951–52 (1st Cir.1989)(transitory employees are protected from politically-motivate non-renewals). As such, a transitory employee's contract cannot be terminated, or unrenewed, on the basis of the employee's political affiliation. We will first address Defendants' contention that Plaintiffs failed to establish a *prima facie* case for political discrimination and then their alleged defenses.

### 1. Plaintiffs' *Prima Facie* Case

■ Defendants contend that Plaintiffs have failed to establish a *prima facie* case of political discrimination. Noticeably with the exception of Co-defendant Rey–Hernández, Defendants have not presented any evidence contesting their awareness of Plaintiffs' political affiliation to the NPP nor do they challenge Plaintiffs' assertion that they belong to the PDP party.

Plaintiffs, on the other hand, have presented ample evidence supporting an inference that Defendants were aware of their political affiliation and that said political affiliation was a substantial or motivating factor in the decision not to renew their contracts. Specifically, Plaintiffs assert that they actively participated in politics and that Defendants were on notice of their affiliation to the NPP. Co-plaintiff Vázquez was an NPP activist, holding the following posts: President of the NPP Women's Organization in Bayamón, Legislative Assistant for the House of Representatives, Advisor for Charlie Rodríguez, NPP Chairman of the Senate of Puerto Rico. Co-plaintiff Martínez attended NPP activities, actively participated in political campaigns, and worked in different elections as electoral officer for the NPP. Co-plaintiff Santana attended NPP activities. Moreover, Plaintiffs proffered a statement by Julita Alicea, a DE employee, that at the DE everyone knows each other's political affiliation and a statement by Co-defendant Motta that, depending under which administration you arrive at the DE, "they put a seal on you" as to which political party you belong to. Plaintiffs also presented testimony from former Co-defendant Pillich that there was a highly politicized atmosphere at the DE.

In addition, Plaintiffs have presented the following material facts which are supported by the record: (1) Federico Cervoni, Esq., Director of the Legal Division of Special Education at the DE, told Co-plaintiffs Martínez and Santana that they would need to pull political strings in order to have their contracts renewed; (2) the evaluation of the administrative judges was based entirely on monthly statistics reports regarding their caseload productivity; (3) the reports only indicate the number of cases assigned to each judge every month and do not indicate the date on which the cases were adjudicated; (4) these reports were not requested by Co-defendant Falcón until sometime at the end of May 2001; (5) Julita Alicea said that Co-defendant Falcón told her in early 2001 to assign more cases to the one judge whose contract was renewed; (6) Co-defendant Falcón, the person to whom Co-defendant Rey–Hernández delegated the authority to renew or not the contracts, did not inform Plaintiffs that they were being evaluated, did not discuss their respective performances with them, and never met with them as part of the evaluation process; (7) none of the Plaintiffs ever received a negative evaluation nor an indication that they were not performing satisfactorily; instead they received positive feedback; (8) Julita Alicea met monthly with Plaintiffs to discuss their active cases and their self-assessment reports, which indicated the time taken to close the cases assigned to them; (9) when asked by Co-defendant Falcón as to Plaintiffs' compliance with their monthly required reports, Julita Alicea responded that Plaintiffs were complying "just fine." Finally, Plaintiffs' material facts indicate that as of June 2001, they had been in their positions for approximately nine, four, and three years, respectively and that they were replaced by Heidi Cabán, Rubis Camacho, and Irlanda Ruiz, all PDP members (Docket # 85). These supported allegations, standing alone, would be sufficient to establish a *prima facie* case of political discrimination.

However, there is further evidence of Plaintiffs' *prima facie* case.

Defendants averred in their motion and presented testimony to the effect that Plaintiffs were terminated due to their poor performance. However, this assertion weakens their argument, buttressing instead Plaintiffs' *prima facie* case. *See Acevedo–Diaz v. Aponte*, 1 F.3d 62, 70 (1st Cir.1993)("The circumstantial evidence of pretext, coupled with direct evidence of discriminatory animus, was sufficient to shift the burden of persuasion to defendants"); *Aponte–Santiago v. Lopez–Rivera*, 957 F.2d 40, 43 (1st Cir.1992)(stating that proof that defendant's asserted non-discriminatory reason for dismissal was pretextual was a "link in a chain of circumstantial evidence" of political discrimination which, added to the allegedly "conclusory" evidence of the timing of the plaintiffs' demotion and the parties' respective political affiliation, created a triable issue warranting reversal of the entry of summary judgment). According to Defendants' own testimony, the reason for the non-renewal of Plaintiffs' contracts was their poor performance as documented in the statistics reports, to wit, that they failed to adjudicate their cases within the prescribed period. However, said reports do not in any way indicate the time it took Plaintiffs to close their cases. Instead, a cursory review of said reports produced by Defendants demonstrates that these reports only indicate the number of cases assigned to each judge per month for several periods of time.

Defendants' poor performance allegations go even further. In their statement, Defendants purport to establish that Co-plaintiff Vázquez's contract was not renewed because she was the judge with the lowest performance (Docket # 70, SUF # 26). The statistics reports in fact show that Co-plaintiff Vázquez's case assignment was roughly one half of that of the other judges. However, in their opposing statements, Plaintiffs aver that the reason was that Co-plaintiff Vázquez worked part time (Docket # 85, OSUF # 26). Defendants' allegations are thus unavailing. The same can be said about Defendants' allegations with respect to the other two Plaintiffs.[3]

The apparent pretextual nature of Defendants' proffered rationale for the non-renewal of Plaintiffs' contracts, coupled with the vast evidence presented by Plaintiffs, and, making all possible inferences in favor of Plaintiffs, as we must at this stage, we find that Plaintiffs have amply contested Defendants' assertions regarding their *prima facie* case. Plaintiffs have presented statements evidencing the charged political environment at the DE and statements supporting the inference that Defendants were aware of Plaintiffs' political affiliation. *See Rodriguez–Rios v. Cordero*, 138 F.3d 22, 24 (1st Cir.1998)("Although a highly charged political atmosphere alone cannot support an inference of discriminatory animus, 'a highly charged political atmosphere ... coupled with the fact that plaintiffs and defendants are of competing political persuasions, may be probative of discriminatory animus.' ")(*quoting Acevedo–Diaz*, 1 F.3d at 69). Furthermore, Plaintiffs have successfully impeached Defendants' proffered nondiscriminatory rationale for not renew-

---

**3.** As to co-plaintiff Martínez, Defendants argue that his contract was not renewed because of his poor performance and his lack of professionalism. Defendants refer to one incident in which Co-plaintiff Martínez had a disagreement with Julita Alicea. However, Co-defendant Falcón never met with Co-plaintiff Martínez regarding this incident, no investigation was performed, and there was no written reprimand. We find that this isolated incident, in comparison with his ten (10) years of service, is insufficient

ing their contracts and, in turn, proffered evidence supporting the conclusion that politically discriminatory animus was at play. In addition, they have presented evidence which shows that they were all replaced by PPD supporters. *Cf. Kauffman v. P.R. Tel. Co.,* 841 F.2d 1169, 1173 (1st Cir.1988)(holding that the plaintiffs could not withstand summary judgment against them based on "general and unsupported allegations" that the defendants belonged to the rival political party and that they lost their jobs shortly after the defendants assumed management positions). Thus, Plaintiffs have produced sufficient evidence to support a *prima facie* case of political discrimination and summary judgment on this point must be DENIED.

Notwithstanding said conclusion, we separately address Defendants' contention that the individual Co-defendants were not directly involved in the decision not to renew Plaintiffs' contracts. Defendants argument is unavailing. Defendants have proffered as "uncontested" that it was Co-defendant Falcón who determined whether Plaintiffs' contracts would be renewed (Docket # 70, SUF # 19). Furthermore, Plaintiffs presented testimony that Co-defendant Motta delayed payment on invoices for work performed by Plaintiffs and met with Co-defendant Falcón to discuss the renewal of Plaintiffs' contracts (Docket # 85, OSUF # 16 & 19).

 Lastly, with respect to Co-defendant Rey–Hernández, Secretary of the DE, Defendants presented the following alleged uncontested material facts: (1) Co-defendant Rey–Hernández did not know Plaintiffs personally nor knew their political affiliation; (2) Plaintiffs do not know Co-defendant Rey–Hernández nor have ever spoken with him; and (3) Co-defendant Rey–Hernández did not review Plaintiffs' contracts nor did he participate in the renewal process. It is uncontested that Co-defendant Rey–Hernández is the nominating authority by law and as such, final responsibility for all hiring and firing rests with him. Furthermore, Co-defendant Rey–Hernández signed Plaintiffs' non-renewal letters. Per the First Circuit Court's ruling in *Ferrer v. Zayas,* 914 F.2d 309 (1st Cir.1990), we cannot say Co-defendant Rey–Hernández, who by law held the ultimate responsibility for employment decisions at the DE, did not know or acquiesce in the decision not to renew Plaintiffs' contracts due to their political affiliation. First, a *prima facie* case for political discrimination may be built on circumstantial evidence. *Kauffman,* 841 F.2d at 1173. Second, it was Co-defendant Rey–Hernández who signed Plaintiffs' non-renewal letters. Third, Plaintiffs evidenced that their political affiliation was known throughout the DE. Fourth, Plaintiffs' non-renewals occurred simultaneously, implying centralized action. *See Ferrer,* 914 F.2d at 312 ("The fact that the nineteen plaintiffs were all N.P.P. sympathizers and that their dismissals all occurred at the same time is suggestive of centralized coordination."). Thus, drawing all possible inferences in favor of Plaintiffs, we cannot say that Co-defendant Rey–Hernández did not know of Plaintiffs' political affiliation and did not, at a minimum, acquiesce in the decision not to renew their contracts because of their political affiliation.

### 2. Defenses

Defendants raise three defenses against Plaintiffs' case of political discrimination: *Mt. Healthy,* qualified immunity, and Eleventh Amendment immunity. We discuss each.

### i. Mt. Healthy

In order to obtain summary judgment on this defense, Defendants would have to

set forth evidence compelling "the finding that political discrimination did not constitute a 'but for' cause' " for the non-renewal of their respective contracts. *Jirau–Bernal v. Agrait,* 37 F.3d 1, 4 (1st Cir.1994). Based on the aforementioned material facts and the discussion above, Defendants have clearly failed to establish that Plaintiffs' contracts would not have been renewed regardless of their political affiliation to the NPP. Therefore, Defendants' request for summary judgment on this ground is **DENIED.**

### ii. Qualified Immunity

▓▓▓ Qualified immunity constitutes a right not to stand trial or face the burdens of litigation. *See Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The procedures regarding qualified immunity allow for judicial review, *via* certiorari, on the qualified immunity issue. *Id.* at 207, 121 S.Ct. 2151. Thus, in order to avoid subjecting state officials to unnecessary and burdensome discovery or trial proceedings, district courts and courts of appeal should rule on the qualified immunity issue from the beginning, focusing on the characterization of the constitutional right in controversy and deciding, whether from the facts alleged in the complaint, a constitutional violation could be found. *See Id.* at 201, 121 S.Ct. 2151; *Judge v. City of Lowell,* 160 F.3d 67, 73 (1st Cir.1998).

A defendant can establish a qualified immunity defense in one of three ways: First, the defense should be sustained if the court finds that it was not clear at the time of the official acts that the interest asserted by plaintiff was protected by a federal statute or the Constitution. Second, even if the interest asserted by the plaintiff was clearly of a type generally protected by federal law, the defendant is entitled to immunity as a matter of law, if it was not clear at the time of the acts at issue that an exception did not permit those acts. Third, even if the contours of the plaintiffs federal rights and the official's permissible actions were clearly delineated at the time of the acts complained of, the defendant may enjoy qualified immunity if, it was objectively reasonable for him to believe that his acts did not violate those rights.

*Walsh v. Franco,* 849 F.2d 66, 69 (2nd Cir.1988), *citing Robison v. Via,* 821 F.2d 913, 920–21 (2nd Cir.1987). Thus, the qualified immunity inquiry is composed of a three-prong test: (1) does the complaint state a claim for relief of a constitutional right?; (2) if it does, was the constitutional right clearly established at the time of the facts alleged in the complaint?; and (3) was it objectionably reasonable for the officer to believe his actions did not violate the claimant's federally protected right?

▓▓▓ In this case, the answer to the first two inquiries is in the affirmative. Plaintiffs have alleged a violation of their right to be free from political discrimination, a recognized constitutional right. Lastly, we find that Plaintiffs have, at a minimum, controverted Defendants' allegations that an objectively reasonable government actor, performing discretionary functions, would not have understood that their conduct violated Plaintiffs' statutory or constitutional rights. Therefore, Defendants' motion for summary judgment on grounds of qualified immunity is **DENIED.**

### iii. Eleventh Amendment

Defendants aver that the monetary claims against them in their official capacity and against the DE should be dismissed based on their entitlement to Eleventh Amendment immunity. As pointed out by Plaintiffs, Defendants had previously re-

quested the same via motion to dismiss, which the Court granted on February 12, 2003, entering Partial Judgment accordingly (Dockets ## 25–26). Therefore, this issue is **MOOT**. Nonetheless, in their opposition, Plaintiffs aver that the Court should reconsider its position given the First Circuit's ruling in *Nieves–Marquez v. Puerto Rico,* 353 F.3d 108 (1st Cir.2003). In said case, the First Circuit decided that, since the DE voluntarily receives millions of dollars in federal funding, it effectively waived any Eleventh Amendment immunity as to § 504 Rehabilitation Act claims. *Id.* at 111. In issuing this decision, the First Circuit also relied on the U.S. Supreme Court decision in *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985)(stating that Congress may "condition participation in … programs funded [by statute] on a State's consent to waive its constitutional immunity"). However, the Rehabilitation Act is not at issue in the instant case. Plaintiffs' federal law claims are premised solely on Section 1983. In discussing Section 1983 claims, the First Circuit in *Nieves–Marquez* reiterated that monetary damages are not available against against a state, its agency, or its officials acting in an official capacity. 353 F.3d at 124 (*citing Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)). Thus, Plaintiffs' argument lacks merit. Moreover, Plaintiffs' request for reconsideration is untimely. Accordingly, Plaintiffs' request for reconsideration on this issue is **DENIED**.

## II. Section 1985(3)

In their complaint, Plaintiffs also allege that they have a cause of action under Section 1985(3), conspiracy to interfere with civil rights (Docket # 1). In their statement of uncontested facts, Defendants included the following assertion: "Plaintiffs Martínez and Santana admitted that they lack knowledge of any conspiracy between Cesar Rey and the other defendants." (Docket # 70, SUF # 12). Plaintiffs admitted said fact, deeming it irrelevant, and asserting that they had not alleged a conspiracy claim in their complaint (Docket # 85, OSUF # 12). Therefore, whatever claim Plaintiffs' had, if any, for conspiracy to interfere with civil rights under Section 1985 is hereby deemed waived and is **DISMISSED WITH PREJUDICE**.

## III. Supplemental Law Claims

In the interest of judicial efficiency and economy and, since Plaintiffs' political discrimination claim survived Defendants' motion for summary judgment, the Court will retain supplemental jurisdiction over the Commonwealth claims alleged in the complaint.

## IV. Conclusion

For the reasons stated herein, Defendants' motion for summary judgment is **GRANTED in part and DENIED in part**. Plaintiffs' conspiracy and due process claims are **DISMISSED WITH PREJUDICE**. Plaintiffs' claim for political discrimination as well as their supplemental law claims remain pending before the Court. Partial Judgment shall be entered accordingly.

**SO ORDERED.**