# United States Court of Appeals

## For the First Circuit

---

No. 09-2060

AZELL MALONE,

Plaintiff, Appellant,

v.

LOCKHEED MARTIN CORPORATION; CARL SUPANCIC,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

---

Before

Lynch, Chief Judge,
Souter,[*] Associate Justice,
and Stahl, Circuit Judge.

---

Michael F. Drywa, Jr. with whom Sims & Sims LLP was on brief for appellant.
Tamika R. Nordstrom with whom Mark T. Reynolds, Miller & Martin PLLC, and Reynolds, DeMarco & Boland LTD were on brief for appellees.

---

June 25, 2010

---

[*]The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**STAHL**, <u>Circuit Judge</u>. Plaintiff-appellant Azell Malone appeals the district court's grant of a post-trial motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b).[1] Before the motion was granted, a jury had entered a verdict and award in favor of Malone and against defendants-appellees Lockheed Martin Corporation and Carl Supancic. The jury found the defendants guilty of employment discrimination based on race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et seq.</u>, the Rhode Island Fair Employment Practices Act (RIFEPA), R.I. Gen. Laws § 28-5-1 <u>et seq.</u>, and the Rhode Island Civil Rights Act of 1990 (RICRA), R.I. Gen. Laws § 42-112-1 <u>et seq.</u>; as well as retaliation based on Malone's alleged whistle-blowing activities, in violation of the Rhode Island Whistleblowers' Protection Act (RIWPA), R.I. Gen. Laws § 28-50-1 <u>et seq.</u> The jury entered an award of $2 million in compensatory and punitive damages.[2]

In a thorough and extensive opinion, the district court subsequently granted defendants' renewed motion for judgment as a matter of law, pursuant to Rule 50(b). As to the racial

---

[1]He also appeals the district court's conditional grant of a new trial under Fed. R. Civ. P. 59. The grant was based in part on the court's finding that plaintiff's counsel made four assertions to the jury during closing which were unsupported by the evidence and were prejudicial to defendants.

[2]The district court subsequently adjusted the award to $1.5 million in order to avoid duplicative recovery.

discrimination claims brought under Title VII, RIFEPA, and RICRA, the district court made three separate determinations. First, it concluded that only two alleged discriminatory acts fell within the actionable time periods of the federal and state statutes (respectively, 300 days and one year), and that Malone failed to present any evidence whatsoever that those two acts were the result of racial discrimination.

Second, the district court noted that acts that occurred outside the actionable time period "'may constitute relevant background evidence.'" Malone v. Lockheed Martin Corp., 2009 WL 2151706, at *19 (D.R.I. July 16, 2009) (quoting National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 112 (2002)); see also Rathbun v. Autozone, Inc., 361 F.3d 62, 76 (1st Cir. 2004) ("A discriminatory act or practice that is not the basis for a timely charge of discrimination nonetheless may constitute relevant background evidence in a proceeding in which the same type of discriminatory act or practice has been timely challenged."). However, upon reviewing this background evidence the court determined that it revealed no sufficient evidentiary basis for the jury finding of racial animus.

Third, the district court concluded that the wrongful acts alleged by Malone which fell outside the relevant limitations periods did not make out a hostile work environment claim (under a so-called "continuing violation" theory) because his supervisors'

repeated disciplinary actions were taken in response to Malone's "undisputed and well documented" habit of "taking unscheduled vacation days over a period of several years," and there was otherwise no objective evidence of a racial motivation for the discipline. Malone, 2009 WL 2151706, at *10. Essentially, the district court determined that it had erred in allowing this evidence before the jury on a continuing violations theory.

As to the retaliation claim brought under the RIWPA, the district court concluded that Malone's report to his superiors that two employees under his supervision were suspected of accepting improper gifts from a federal employee was not the kind of act protected by the RIWPA. In the alternative, the court also concluded that Malone failed to put forth any evidence that his subsequent reprimands and demotion were caused by his report of the improper gifts rather than by his recurring absenteeism; the court concluded that the jury's determination of causation "amount[ed] to nothing more than speculation." Malone, 2009 WL 2151706, at *15.

Having reviewed the record carefully, we affirm the district court's entry of judgment as a matter of law against Malone as to all claims.[3] We conclude, as the district court did

---

[3]As a preliminary matter, we find no merit to Malone's argument that defendants' Rule 50(a) motion, made at the close of the plaintiff's evidence, was insufficient to preserve consideration of their renewed motion pursuant to Rule 50(b) after the jury reached its verdict. See Lynch v. City of Boston, 180 F.3d 1, 13 n.9 (1st Cir. 1999).

-4-

and for substantially the same reasons, that the record reveals no sufficient evidentiary basis for the verdict. Because our reasoning does not differ substantially from that of the district court, we outline the relevant facts and law only to the extent necessary to explain our conclusions; a fuller treatment of the case background is available in the district court's opinion.

A. Standard of Review

We generally review a district court's grant of a Rule 50 motion de novo. Visible Syst. Corp. v. Unisys Corp., 551 F.3d 65, 71 (1st Cir. 2008).[4] In so doing, we use the same standard as the

---

[4]This case presents one wrinkle in terms of our standard of review as related to the evidence Malone presented about incidents that occurred outside the actionable limitations periods. The district court considered this evidence in two ways. First, it considered the evidence as admissible background evidence that could provide a context for understanding whether the discrete acts within the limitations period were indeed motivated by racial animus. See Rathbun, 361 F.3d at 76. Examining the evidence in this light, the court determined that the acts did not provide a sufficient evidentiary basis for the verdict because they lacked any indication of racial animus as a motivating factor for the behavior of Malone's supervisor, Carl Supancic. This type of decision fits within our regular de novo framework for reviewing Rule 50 grants because it involves a normal sufficiency of the evidence determination. See Visible Syst., 551 F.3d at 71.

The second way the district court examined the evidence that fell outside the limitations periods was to revisit its preliminary decision to admit this evidence in support of Malone's continuing violation/hostile work environment theory. Having heard the evidence in full, the district court determined at the Rule 50(b) stage that Malone had failed to make out such a claim and therefore that the evidence should not have reached the jury, at least not on that theory. This type of decision, determining the admissibility of evidence on relevance grounds, would normally require review for abuse of discretion alone. See United States v. Gobbi, 471 F.3d 302, 311 (1st Cir. 2006).

In this case, we need not definitively determine the standard

district court in evaluating the motion, meaning that "[a]ll of the evidence and reasonable inferences drawn from the evidence are . . . considered in the light most favorable to" the non-moving party, here Malone. See Espada v. Lugo, 312 F.3d 1, 2 (1st Cir. 2002). Further, "[i]n reviewing the record, we will evaluate neither the credibility of the witnesses nor the weight of the evidence." Vazquez-Valentin v. Santiago-Diaz, 385 F.3d 23, 29 (1st Cir. 2004), rev'd on other grounds, 546 U.S. 1163 (2006). However, and crucially in this case, "'the plaintiff is not entitled to inferences based on speculation and conjecture.'" Id. at 30 (quoting Ferrer v. Zayas, 914 F.2d 309, 311 (1st Cir. 1990)).

The standard for granting a Rule 50 motion is stringent. "Courts may only grant a judgment contravening a jury's determination when 'the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party.'" Rivera Castillo v. Autokirey, Inc., 379 F.3d 4, 9 (1st Cir. 2004) (quoting

---

of review to be applied to the district court's two-pronged evaluation of the evidence regarding acts outside the limitations periods because under either standard of review we agree with the district court that the evidence is simply bereft of any indication of racial animus on the part of Supancic, Malone's supervisor. However, for simplicity and because it is the most favorable approach for the appellant, we employ the de novo framework and assume without deciding that the acts that occurred outside the limitations periods were properly before the jury at least for the purposes of providing background context for the acts that took place within the limitations periods.

<u>Keisling</u> v. <u>SER-Jobs for Progress, Inc.</u>, 19 F.3d 755, 759-60 (1st Cir. 1994)).

B. Background Facts

As noted above, we leave the myriad details of this case to the district court's comprehensive opinion.  Essentially, Malone, an African-American male engineer, received a series of escalating reprimands, deteriorating performance reviews, and eventually a demotion while employed at Lockheed Martin's facility in Newport, Rhode Island.  The reprimands, at least six between 2002 and 2005, were issued by two consecutive supervisors, Carl Supancic and James Higson,[5] in response to Malone's continued practice of requesting vacation days without prior notice, on the morning of the day he wished to take off, or failing to report for work without seeking permission at all.[6]  Despite being told repeatedly and in writing that such actions were disruptive, disfavored, and could lead to job termination, Malone continued the practice.  He also continued the practice despite imposition of a performance improvement plan, which was designed by Lockheed's human resources managers and legal department.  Perhaps the most

---

[5]Higson passed away before trial.

[6]Evidence was presented at trial showing that Malone was receiving treatment throughout most of this period for panic attacks, insomnia, depression, and episodic alcohol abuse. Witnesses at trial also testified regarding incidents wherein coworkers noted that Malone's breath smelled of alcohol at work and where Malone's speech seemed slurred or disjointed when he telephoned to request a day off.

egregious example of this behavior occurred on two consecutive days in October 2004, when Malone failed to receive advance permission for time off or report to work despite the delivery of letters via courier to his home each day demanding his attendance at work.

As for evidence that the reprimands, performance reviews, and eventual demotion may have been caused by race-based animus, we agree with district court that such evidence was lacking from the trial record. Malone's theory was that his first supervisor, Carl Supancic, who directed a majority but not all of the reprimands and discipline of Malone, was racially biased against him. Malone admitted, however, that he only reached this conclusion "after ruling everything [else] out." There was no other evidence submitted that suggested Supancic's actions were motivated by racial animus.[7] The only racially tinged incident put forth by

[7]Malone argues on appeal that the trial court mischaracterized the record on two related factual issues. First, he says that the trial court overlooked that he submitted evidence showing that white employees were treated preferentially in that they were permitted to take vacation days even if they made the request on the morning of the day they wished to take off. The evidence Malone cites to in support of this contention consists solely of: (1) his own testimony that a white employee, Cobb, was permitted to take vacation days on the day the requests were made; and (2) Cobb's testimony. However, we agree with the district court that Cobb's testimony on its face does not support Malone's assertion of differential treatment based on race. Cobb testified that he had "occasionally" requested vacation days on the same day he called in but that such a practice was "uncommon" and that he did not make it a "routine practice." In contrast, the evidence is uncontroverted that Malone did so routinely over a period of years, often by leaving a voice mail message informing his supervisor of his last-minute decision, despite repeated admonitions and requests for improved behavior. Thus, the district court was correct that

Malone was that coworkers, not including Supancic, once joked that Malone was "driving Miss Daisy" because he had to drive a white colleague to and from a work site.[8]

C. Racial Discrimination Claims

The district court correctly determined that only two discrete acts of alleged discrimination occurred within the statute of limitations for purposes of claims made under Title VII[9] and the state statutes. These two events were: (1) an "Updated Final

---

Malone submitted no evidence showing that white employees were permitted to chronically violate the vacation policy while Malone was held to a different standard.

Second, Malone argues that the district court misstated the facts when it determined that Malone did not put forth any evidence showing that white managers were treated preferentially during a company reorganization. In April 2004, Lockheed began a reorganization that would result in all Level 4 managers being reclassified from managers to non-management employees (who would carry the new title Engineer-in-Charge). This amounted to a change in title, but not a change in responsibility, pay, or benefits. Malone contends that he provided evidence that only he was subjected to this re-titling and that several white managers who also should have been subject to re-titling were spared. However, our review of the record shows that the district court correctly determined that the evidence showed that there were at least two white managers who, along with Malone, also qualified for the title change and who, along with Malone, were indeed re-titled according to the terms of the reorganization plan. Therefore, we find no basis for Malone's argument on this point.

[8]As the district court explained, "Driving Miss Daisy" was a "1989 film set in the American South about the relationship between an elderly Jewish woman and her African-American chauffeur." Malone, 2009 WL 2151706, at *5 n.1.

[9]For the sake of thoroughness, we note that the Supreme Court's recent decision in Lewis v. City of Chicago, No. 08-974, 78 U.S.L.W. 4437 (May 24, 2010), which involves Title VII's 300-day statute of limitations in the disparate impact context, does not affect our analysis in this case.

-9-

Warning" regarding Malone's attendance issues that was issued by Malone's subsequent supervisor, Higson; and (2) a performance review that rated Malone as a "Basic Contributor" that was likewise issued by Higson. There was no claim that Higson himself took these actions based on racial animus, only an assertion that Higson fell under Supancic's influence. In addition, Malone submitted little evidence[10] other than his own conjecture,[11] that Higson's

_____

[10]Malone did testify at trial as to two incidents that he argues support the conclusion that Supancic influenced Higson's evaluation of Malone's work even after Malone was put under the direct supervision of Higson. First, at some point in 2005 Higson granted Malone time off at the last minute to pick up a relative who was arriving in town. Malone testified that when Supancic heard of Higson's decision he overruled it and demanded that Higson tell Malone to report to work. Second, Malone testified that at a 2005 meeting regarding his performance Higson told him that "I did not have an attendance problem . . . I had a Carl [Supancic] problem." Malone testified that he took this to mean that Higson "was getting fed up with Carl micromanaging me through him." These statements arguably support an inference that Supancic, who was the overall site manager for the Newport project, maintained some involvement in Malone's supervision even after Higson became his direct supervisor. However, they are not sufficient to support Malone's much heavier burden to show that Supancic influenced the issuance of the "Updated Final Warning" and the performance review labeling him as a "Basic Contributor." Further, even if such an inference were supported by Malone's limited testimony about what Higson supposedly told him, the overwhelming objective evidence showed that Malone did indeed have an attendance problem. In addition, as we discuss below, Malone submitted no evidence showing that Supancic was motivated by racial animus, meaning that even if Supancic retained significant influence over Malone's supervision in 2005, Malone could not prove that such influence was tainted by racial bias. Finally, nothing in Malone's testimony about Higson's statements suggests that Higson believed Supancic was motivated by racial animus.

[11]Despite his conjecture, Malone himself admitted at trial that he did not know whether Supancic had any influence over Higson's evaluation of his (Malone's) work.

issuance of either of these reports was influenced by Supancic. Thus, as a matter of law, these two events could not have formed an adequate basis for the jury's finding of liability. Vazquez-Valentin, 385 F.3d at 30 (rejecting inferences based on speculation and conjecture alone); Ferrer, 914 F.2d at 311 (same).

As correctly noted by both parties in supplemental briefing, evidence of events that fall outside the statute of limitations may still be admitted as relevant background evidence to show that discriminatory animus motivated the acts that occurred within the statute of limitations. See Rathbun, 361 F.3d at 76. However, this rule does nothing to help Malone's cause because he offered no evidence that the acts that fell outside the limitations periods (including Supancic's reprimands, performance reviews, and eventual demotion of Malone) were motivated at least in part by racial animus. As discussed above, Malone submitted no evidence suggesting any racial motivation for Supancic's response to Malone's continued and severe absenteeism problem. The district court considered and dismissed the probative value of this background evidence, as do we.[12]

_____

[12]The district court also correctly dismissed Malone's attempt to circumvent the statute of limitations problem by alleging a "continuing violation" claim. Malone argues that Supancic's disciplinary measures amounted to a pattern of harassment that constituted a hostile work environment and thus a continuing violation, meaning that the normal time bars would not prevent a finding of liability based on those events. See Morgan, 536 U.S. at 115-16; Tobin v. Liberty Mutual Ins. Co., 553 F.3d 121, 130 (1st Cir. 2009); Thomas v. Eastman Kodak Co., 183 F.3d 38, 54 (1st Cir.

-11-

D. Retaliation Claim

Malone's other claim was that, in violation of the Rhode Island Whisteblower Protection Act, R.I. Gen. Laws § 28-50-3 (4), he was demoted from Engineer-in-Charge to Field Engineer[13] in November 2004 as a result of reporting to his superiors that two of his subordinates were suspected of accepting improper gifts of tools from a government employee.[14] Malone's report was not based on first-hand knowledge, but rather on a report he received from another subordinate who was a co-worker of the suspected employees. Following Malone's report, Lockheed's human resources division

_____

1999). It is certainly true that under the continuing violations doctrine "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered for purposes of determining liability." Morgan, 536 U.S. at 103. However, the plaintiff must still show that "the employer has engaged in enough activity to make out an actionable hostile environment claim." Id. at 117. It is here that Malone's claim fails. The facts simply do not support his contention that Supancic's disciplinary measures were the result of anything other than a legitimate concern with Malone's continued absenteeism. See Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (1998) (defining a hostile work environment as one where "'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment'") (quoting Harris v. Forklift Systs., Inc., 510 U.S. 17, 21 (1993) (emphasis added).

[13]This demotion constituted a reduction of his responsibilities but not of his pay or benefits.

[14]Allegedly the government employee, who oversaw the contract that had been awarded to Lockheed, was stealing scrap materials from the Lockheed facility and providing gifts of tools to two Lockheed employees in order to buy their silence regarding the theft.

initiated an ethics investigation that, among other things, resulted in a written warning to Malone which concluded that his "lack of effective and/or active management practices contributed to" the gift incident. All evidence presented showed that Supancic had no role in disciplining Malone for this incident.

Putting aside whether Malone's report to his superiors even constituted a protected act under the Rhode Island statute, we affirm the district court's entry of judgment as a matter of law on this issue because Malone offered no evidence of causation other than pure speculation. Malone's theory at trial was that because he reported his subordinates' malfeasance he suffered increased scrutiny of his attendance and was eventually demoted from Engineer-in-Charge to Field Engineer. The evidence, however, showed that his attendance problems had been at issue for at least two years prior to Malone's report of the gifts. Without more, and Malone did not offer more, the causal link between his report and his discipline for attendance issues was not established as a matter of law. See Wright v. CompUSA, Inc., 352 F.3d 472, 478 (1st Cir. 2003) (explaining that "chronological proximity does not by itself establish causality, particularly if '[t]he larger picture undercuts any claim of causation'") (quoting Soileau v. Guilford of Maine, Inc., 105 F.3d 12, 16 (1st Cir. 1997)). Further, following Malone's report of the improper gifts in September 2004, he was absent without prior authorization and could not be reached for two

days in October 2004 and for another two days in November 2004.
Malone's demotion to Field Engineer took place immediately after
the November absences. We agree with the district court's
conclusion that:

> Against the background of Malone's unscheduled
> absences over a period of more than two years,
> a causal link between the forwarding of [the
> subordinate's] report and Malone's reassignment
> to Field Engineer . . . amounts to nothing more
> than speculation, based solely on the fact that
> the re-assignment happened at some point <u>after</u>
> the report was forwarded.

Malone, 2009 WL 2151706, at *15 (emphasis in original). We
therefore affirm entry of judgment as a matter of law with respect
to the RIWPA claim.[15]

E. Conclusion

For the foregoing reasons, we **<u>affirm</u>** the district court's
entry of judgment as a matter of law pursuant to Rule 50(b) as to
all claims.

**<u>Affirmed</u>**.

---

[15]Because we affirm the district court's entry of judgment as
a matter of law as to both claims, we do not address Malone's
objection to the district court's conditional grant of a new trial
pursuant to Fed. R. Civ. P. 59.