# United States Court of Appeals
## For the First Circuit

No. 09-2630

ANALYSIS GROUP, INC.,

Plaintiff, Appellee,

v.

CENTRAL FLORIDA INVESTMENTS, INC.,

Defendant, Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin and Howard, Circuit Judges.

Richard W. Epstein, with whom Victor S. Kline was on brief,
for appellant.
David B. Mack, with whom Thomas N. O'Connor was on brief, for
appellee.

December 9, 2010

**LYNCH**, <u>Chief Judge</u>.  This case concerns a client's failure to pay for an expert's expedited services in an underlying litigation.

Central Florida Investments, Inc. (CFI) appeals from a Massachusetts jury verdict on a breach of oral contract claim awarding Analysis Group, Inc. (AGI) fees for expert services it provided to CFI in connection with a Florida case between CFI and its competitor, the Bluegreen Corporation (Bluegreen).  CFI unsuccessfully argued to the jury in this case that AGI was not entitled to fees it sought for its own work on the <u>Bluegreen</u> litigation because, while CFI authorized the retention of Professor Lucian Bebchuk as an expert witness through AGI, CFI did not authorize the retention of AGI itself to provide Professor Bebchuk with the expert support services it did.

On appeal, CFI argues that the district court erred in instructing the jury that CFI's counsel, Michael Marder and the firm of Greenspoon Marder, acted as CFI's agent during the relevant period.  CFI argues this was prejudicial error that entitles it to judgment as a matter of law, or, alternatively, a new trial.  CFI also argues the district court erred in awarding prejudgment interest.  AGI has filed a motion for sanctions, alleging CFI's appeal is frivolous.  We affirm the judgment and the award of interest.  We deny AGI's motion for sanctions.

I.

The facts are recited in a light most favorable to the jury's verdict.  Wilson v. City of Boston, 421 F.3d 45, 47 (1st Cir. 2005).  In August 2006, CFI, a Florida-based time-share operator, was sued by its competitor, Bluegreen.  Bluegreen alleged CFI had violated securities laws by attempting to secure a majority stake in Bluegreen without complying with securities reporting requirements.  CFI was represented in the Bluegreen litigation by its long-time counsel, the Florida law firm of Greenspoon Marder, of which CFI's general counsel, Michael Marder, was a partner.  CFI also retained White & Case, LLP of New York as co-counsel.

Greenspoon Marder, together with White & Case, determined that CFI needed a corporate governance expert to testify in support of its motion for a temporary restraining order against Bluegreen, which it filed in late August 2006.  On or about September 7, 2006, John Chung, a White & Case attorney, contacted Pierre Cremieux of AGI, a consulting services firm, in hopes of finding a suitable expert.  Cremieux quickly identified Professor Lucian Bebchuk of the Harvard Law School as an ideal candidate.  Cremieux arranged a phone call between himself, Professor Bebchuk, Chung, and another White & Case attorney on September 9, 2006.  Following the call, Chung and the other White & Case attorney indicated to Cremieux that they would seek authorization to retain Professor Bebchuk.

Chung then recommended to attorneys Michael Marder and Richard Epstein of Greenspoon Marder that Professor Bebchuk be retained.

From the start, the White & Case attorneys understood that, should Professor Bebchuk be retained, AGI "had to play a very pivotal role as the consulting expert" by supporting Professor Bebchuk with research and other assistance. In White & Case's view, AGI's support services were especially necessary given that the deadline for submission of CFI's expert report was September 18, 2006, only eleven days after Chung's initial call to AGI.

After a September 10, 2006 settlement conference between CFI and Bluegreen proved unsuccessful, Epstein left a voicemail message for Chung, authorizing Professor Bebchuk's retention. Chung testified that he believed Epstein's message also authorized White & Case to retain AGI's support services.

The decision to retain Professor Bebchuk was reached despite the recognition of a potential conflict regarding AGI's involvement in the Bluegreen litigation. Shortly after Chung recommended Professor Bebchuk's retention to Greenspoon Marder, Glenn Kurtz, another White & Case attorney, notified Greenspoon Marder that opposing counsel in the Bluegreen litigation had contacted AGI to find an expert. Given the role AGI would play in the preparation of Professor Bebchuk's report, Kurtz feared that opposing counsel's contact with AGI would render any report drafted by Professor Bebchuk vulnerable to a motion to disqualify.

-4-

Nonetheless, Kurtz believed the risk of disqualification to be small, and advised that Professor Bebchuk still be retained.

Kurtz testified that he had two telephone conversations with Michael Marder regarding this potential conflict issue. Kurtz recalled that, during the first conversation, Marder suggested the conflict issue could be resolved if AGI "pulled out" of its role in the Bluegreen litigation. Kurtz asked Cremieux whether that was a viable possibility, but Cremieux responded that Professor Bebchuk could not complete the report on CFI's expedited schedule without AGI's assistance. Kurtz testified that, during his second conversation with Marder, he informed Marder that "Bebchuk was . . . unable to take the engagement without the assistance of [AGI] and [Marder] said, OK. Let's go forward." At trial, Marder disputed this testimony.

Professor Bebchuk, aided by AGI, worked on the expert report from September 9, 2006[1] until its submission on September 18, 2006.[2] During this time, Professor Bebchuk's and AGI's primary contact was White & Case, not Greenspoon Marder or CFI. However, White & Case and Greenspoon Marder frequently communicated about

_____

[1] Because CFI needed the expert report by September 18, 2006, Professor Bebchuk began work on the report on September 9, 2006, even though he had yet to be officially retained. AGI had agreed to repay Professor Bebchuk for his pre-retention services if CFI ultimately declined to retain his services.

[2] The court presiding over the Bluegreen litigation denied CFI's requested relief, and CFI and Bluegreen reached an out-of-court resolution of their dispute.

the progress of the report, including AGI's work, and Greenspoon Marder received numerous documents clearly originating from AGI.

Neither Greenspoon Marder nor CFI questioned AGI's involvement during this period. Greenspoon Marder inquired once as to the scope of AGI's involvement, but never questioned the fact that AGI was participating in the creation of the report in the first place. In a September 17, 2006 email exchange between Epstein and White & Case attorneys, Epstein asked, "Anything from Bebchuk yet?" A White & Case attorney replied, "AG just told me within the next half hour," to which Epstein responded, "Is AG separately doing an economic analysis of the rights plan?"

Because of the expedited schedule, AGI did not send an engagement letter to White & Case until after the conclusion of its work, on September 21, 2006.[3] Kurtz signed the engagement letter on October 2, 2006, at which time there was "no question" in his mind that CFI, through Greenspoon Marder, had authorized AGI's retention. The engagement letter was sent to CFI on October 3, 2006. CFI did not raise any question as to AGI's engagement at this juncture.

On October 27, 2006, AGI sent an invoice to CFI in the amount of $318,952.43 for services it had rendered in connection with the Bluegreen litigation. This amount included $88,500 in

---

[3] The engagement letter was nonetheless dated September 11, 2006, the original date Cremieux had drafted it.

fees for Professor Bebchuk. By letter dated November 16, 2006, Greenspoon Marder asked AGI to provide additional records regarding the invoice, which AGI provided on November 27 and December 4, 2006. Within its November 16 request, Greenspoon Marder neither asserted that CFI was unaware of AGI's involvement, nor questioned whether CFI had authorized AGI's work.

Months later, on January 31, 2007, Epstein informed AGI that CFI would not pay AGI its requested fees. Following further correspondence, Epstein wrote to AGI in March 2007, stating that CFI was unaware of AGI's retention, was not consulted prior to AGI's retention, did not consent to AGI's engagement, and would therefore not pay AGI's "grossly excessive" fees. CFI did pay Professor Bebchuk's fee in full.

AGI's suit against CFI was tried to a federal jury in Massachusetts from May 4, 2009 to May 8, 2009. In instructing the jury, the district court stated: "In this case, it's not disputed . . . that the Marder law firm, Marder being general counsel to [CFI], the Marder law firm was [CFI's] agent. So, they were acting on behalf of [CFI]." The court continued: "If [CFI] said either directly or through its agent, the Marder firm, if it said, go ahead, hire [AGI] . . . and White & Case then went ahead and did it with that express authority," then "CFI is bound . . . ." The court also referred to Greenspoon Marder as CFI's "undoubted agent."

-7-

CFI timely raised an objection to the jury instructions, stating: "The only objection, just for the record, is that the instruction assumes that Greenspoon Marder was CFI's agent for all purposes . . . ."  The court overruled the objection, reasoning that "the admissions justify" such an instruction.  This referred to an admission CFI had made earlier in response to an AGI discovery request.  Upon being asked to admit that "at no time during the Bluegreen litigation did Greenspoon Marder, P.C. act without authority on behalf of CFI," CFI responded in part: "CFI admits that [Greenspoon Marder] remained one of CFI's litigation counsel throughout the Bluegreen litigation and acted throughout such litigation only as directed and authorized by CFI."

The jury returned a verdict in favor of AGI for $460,964.86, twice the amount AGI requested, plus legal fees and expenses that AGI never sought.  The court entered judgment awarding the full $460,964.86, but without any attorney's fees. CFI filed a motion for judgment as a matter of law and a motion for new trial, both of which were denied.  CFI also filed a motion for remittitur, which the court granted.  The court lowered the award to $230,452.43, plus prejudgment interest from November 27, 2006, a date thirty days after AGI's demand.

II.

CFI appeals the district court's denial of CFI's motion for judgment as a matter of law and alternative motion for a new trial, as well as the district court's prejudgment interest award.

A.    Denial of Judgment as a Matter of Law and New Trial Motions

A district court's denial of a motion for judgment as a matter of law is reviewed de novo. Che v. Massachusetts Bay Transp. Auth., 342 F.3d 31, 37 (1st Cir. 2003). But "[o]ur review is 'weighted toward preservation of the jury verdict' because a verdict should be set aside only if the jury failed to reach the only result permitted by the evidence." Quiles-Quiles v. Henderson, 439 F.3d 1, 4 (1st Cir. 2006) (quoting Crowley v. L.L. Bean, Inc., 303 F.3d 387, 393 (1st Cir. 2002)). We review the denial of a motion for a new trial for abuse of discretion. Granfield v. CSX Transp., Inc., 597 F.3d 474, 488 (1st Cir. 2010).

CFI's appeal from the denial of both of its post-verdict motions is predicated on its assertion that the district court erred in instructing the jury. The question of whether CFI adequately objected to the instructions at trial--and the contingent question of whether we review the instructions de novo or for plain error--is complicated by CFI's equivocation as to what

element of the jury instructions it challenges on appeal.[4] We bypass the question of preservation of the objection. Each of the particular jury instructions that CFI's claim on appeal can be read as contesting--that Greenspoon Marder was CFI's "undoubted agent" and that Greenspoon Marder acted only as authorized by CFI throughout the Bluegreen litigation--were supported by the record. Under either de novo or plain error review, neither of those instructions constitutes error.[5]

---

[4] CFI initially portrays its claim regarding the jury instructions as centered on the district court's declaration that Greenspoon Marder acted as CFI's "undoubted agent" throughout the Bluegreen litigation. Were this so, CFI's objection at trial-- "that the instruction assumes that Greenspoon Marder was CFI's agent for all purposes"--would likely be sufficient to preserve its claim, and we would review that instruction de novo, reversing only if any error "is determined to have been prejudicial based on a review of the record as a whole." Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 72 (1st Cir. 2009).

But CFI's briefing, including its statement that it "unequivocally admits Greenspoon Marder's agency," suggests that CFI does not actually take issue with the "undisputed agent" instruction at all. Rather, on appeal CFI often argues as if its challenge is to a different component of the jury instructions, namely, the court's instruction that it is "undisputed that everything Marder did, that was from authority from Central Florida." CFI's unspecific objection at trial would be insufficient to preserve a challenge to the instructions on this ground. Linn v. Andover Newton Theological Sch., Inc., 874 F.2d 1, 5 (1st Cir. 1989) ("If there is a problem with the instructions, the judge must be told precisely what the problem is, and as importantly, what the attorney would consider a satisfactory cure."). Framing CFI's claim in this way, we would thus review the jury instructions under the more deferential plain error standard. See Estate of Keatinge v. Biddle, 316 F.3d 7, 16 (1st Cir. 2002).

[5] At oral argument, we requested supplemental briefing from both parties on the issue of whether CFI adequately alerted the district court to its objections to the jury instructions. Our

-10-

CFI's admission that "Greenspoon Marder remained one of CFI's litigation counsel throughout the Bluegreen litigation and acted throughout such litigation only as directed and authorized by CFI" removed from trial any question of whether Greenspoon Marder had acted as CFI's agent in the underlying litigation. By its plain meaning, the admission sufficiently establishes that if Greenspoon Marder acted, it necessarily did so with full authority from CFI. See Brook Village North Assocs. v. Gen. Elec. Co., 686 F.2d 66 (1st Cir. 1982) (citing Fed. R. Civ. Proc. 36). The jury instruction goes no further.

That Greenspoon Marder's agency to act for CFI was never in dispute at trial is also manifest in CFI's pretrial memorandum. CFI identifies the crucial agency issue for trial as:

> Whether [AGI] can demonstrate that CFI actually authorized White & Case to act as its agent and to enter into the contract with [AGI] where . . . White & Case did not consult with Greenspoon Marder or CFI on the decision to contact [AGI] regarding expert services [and] White & Case did not consult with Greenspoon Marder or CFI before interviewing AGI.

(Emphasis added.) This implicitly makes clear that, if Greenspoon Marder in fact authorized White & Case to retain AGI, that authorization would have sufficed.

In sum, whether instructing White & Case to hire AGI fell within the scope of Greenspoon Marder's authority from CFI was

opinion reflects our consideration of the supplemental briefing.

-11-

never an issue at trial; the issue was whether Greenspoon Marder did authorize White & Case to hire AGI.[6]  That question of fact was properly left for the jury to decide.  CFI cannot now pursue an alternate defense merely because the one it put forth at trial failed.  The jury instructions do not entitle CFI to judgment as a matter of law or a new trial.[7]

B.        Award of Prejudgment Interest

We review an award of prejudgment interest for abuse of discretion, see Hogan v. Bangor & Aroostook R.R. Co., 61 F.3d 1034, 1038 (1st Cir. 1995), but legal issues relating to the prejudgment

---

[6]    CFI itself insists that this was the only material issue at trial.  In its briefing on appeal, CFI urges that AGI's arguments on appeal miss the mark because CFI "never suggested and specifically rejected that Greenspoon Marder acted without authority."

[7]    To the extent that CFI's motion for judgment as a matter of law can be construed as a challenge to the sufficiency of the evidence supporting the jury's verdict, we also affirm its denial. Ample evidence supports the verdict, including: Greenspoon Marder's consideration of the conflict issue involving AGI, the significance of which largely depends upon AGI's retention; Epstein's September 10, 2006 voicemail to proceed with the retention, which Chung testified he interpreted as authorizing hiring the complete package of Professor Bebchuk and AGI's support services; Kurtz's testimony regarding his phone calls with Marder during which he explained that Professor Bebchuk was "unable to take the engagement" without AGI's retention; Greenspoon Marder's failure to question progress reports that included updates on AGI's work; CFI's and Greenspoon Marder's failure to question AGI's involvement upon receiving its engagement letter on October 3, 2006; and Greenspoon Marder's failure to question AGI's overall involvement upon receiving AGI's invoice, instead opting to merely request more detailed billing records.

interest award are reviewed de novo, <u>Rhode Island Charities Trust</u> v. <u>Engelhard Corp.</u>, 267 F.3d 3, 5 (1st Cir. 2001).

In this diversity action, Massachusetts law governs the prejudgment interest award. Mass. Gen. Laws ch. 231, § 6C provides, inter alia, that "interest shall be added by the clerk of the court to the amount of damages, at the contract rate, if established, or at the rate of twelve per cent per annum from the date of the breach or demand." The statute also provides: "If the date of the breach or demand is not established, interest shall be added by the clerk of the court, at such contractual rate, or at the rate of twelve per cent per annum from the date of the commencement of the action . . . ." <u>Id.</u>

CFI argues that the prejudgment interest award from November 27, 2006 was error because the date of demand was never "established." In doing so, CFI cites numerous cases for the proposition that a prevailing party must establish the date of breach or the date of demand in order to recover prejudgment interest. <u>See</u>, <u>e.g.</u>, <u>Boston Gas Co.</u> v. <u>Century Indem. Co.</u>, 529 F.3d 8, 22 (1st Cir. 2008).

But these cases are beside the point. Here, the date of demand was established by an admission from CFI at the briefing stage. In its complaint, AGI alleged: "On or around October 27, 2006, [AGI] submitted a detailed invoice to Thomas F. Dugan of CFI in the amount of $318,952.43 for services rendered . . . ." CFI

-13-

responded: "Defendant admits that Plaintiff submitted an invoice, but denies that it is entitled to payment of same."  The district court rightfully based its prejudgment award on this date, as AGI had no obligation to establish a fact already admitted.  Meschino v. N. Am. Drager, Inc., 841 F.2d 429, 435 (1st Cir. 1988).  The requirements of the Massachusetts prejudgment interest statute have been satisfied, and the prejudgment interest award was proper.[8]

### III.

AGI filed a motion for sanctions pursuant to Rule 38 of the Federal Rules of Appellate Procedure and 28 U.S.C. § 1927 on the basis that CFI's appeal is groundless and intentionally misleading.

"Appellate sanctions are a means of discouraging litigants and their lawyers from either wasting an adversary's time and resources or burdening the court with obviously groundless appeals."  Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 36 (1st Cir. 2004).  Fed. R. App. P. 38 provides that, if a court of appeals "determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee."  28 U.S.C. § 1927 provides that any

---

[8]  We decline to evaluate the district court's decision to award prejudgment interest from a date thirty days after the demand.  CFI has not challenged the prejudgment interest award on this basis.

attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

Although CFI's appeal fails, we conclude that it was neither frivolous nor an unreasonable or vexatious multiplication of proceedings. See United States v. Knott, 256 F.3d 20, 30-31 (1st Cir. 2001) (addressing § 1927 standards); Cronin v. Town of Amesbury, 81 F.3d 257, 261 (1st Cir. 1996) (addressing Rule 38 standards).

IV.

The district court's judgment is affirmed. AGI's motion for sanctions is denied.