# United States Court of Appeals
## For the First Circuit

Nos. 15-1503, 15-1529

SAMUEL BERKOWITZ,

Plaintiff - Appellee/Cross-Appellant,

v.

BONNIE BERKOWITZ,

Defendant - Appellant/Cross-Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Kayatta, Stahl, and Barron,
Circuit Judges.

Albert P. Zabin, with whom Duane Morris LLP was on brief, for appellant/cross-appellee.
Gerald A. Phelps, for appellee/cross-appellant.

March 25, 2016

**BARRON**, **Circuit Judge**.  These cross-appeals are brought by a father and his daughter.  They follow a jury verdict in a lawsuit for breach of fiduciary duty that the father brought against the daughter.  A key issue at trial concerned whether the daughter forged the father's signature to effectuate the transfer of certain of the father's assets.  The daughter contends on appeal that the District Court erred in denying her motion for judgment as a matter of law, in part due to problems with the father's testimony concerning the daughter's alleged forgery.  The father argues in his cross-appeal that the District Court erred in awarding him prejudgment interest from the date that he filed this lawsuit rather than from the date the daughter breached her fiduciary duty.  We affirm the District Court in all respects.

## I.

The father in this intra-family dispute is Samuel Berkowitz.[1]  The daughter is Bonnie Berkowitz.[2]  The assets at issue are properties and securities that Samuel held that were transferred to Bonnie and to Samuel's then-wife, Barbara.

---

[1] In order to avoid confusion, we refer to the parties by their first names throughout the opinion.  See United States v. Serunjogi, 767 F.3d 132, 135 n.1 (1st Cir. 2014).  The relevant facts, unless otherwise noted, are not in dispute and are drawn from the District Court's opinion and the trial transcript.

[2] It appears that her name may actually be Bonni Berkowitz. We use Bonnie as that is the name on the docket and that both parties use in the briefing.

In 1999, Samuel -- who was sick at the time -- transferred his interests in three Chelsea, Massachusetts properties to Bonnie and Barbara. He claims that he had put the properties into trust -- with Bonnie as the trustee -- so that, in the case of Samuel's death, the properties could benefit Barbara and, after her death, Bonnie and Samuel's son. But, Samuel contends, Bonnie and Barbara sold the properties prior to his death and kept the proceeds from the sales.

In addition, Samuel contends that, around the time that he transferred his interests in the Chelsea properties, Bonnie transferred about $1 million worth of securities owned by Samuel and Barbara into an account controlled by Bonnie and Barbara. Samuel claims that Bonnie forged his signature to effect the transfer.

On the basis of these allegations, Samuel, who is a Florida resident, filed this diversity suit against his daughter, a Massachusetts resident, in the District of Massachusetts in March of 2011. He contended that Bonnie -- to whom he had given a power of attorney in 1998 -- breached her fiduciary duty to him by improperly disposing of the Chelsea properties prior to his death and by effectuating the transfer of the securities through the forging of his signature. His suit sought damages for the losses resulting from the fiduciary breach.

Bonnie moved to dismiss, but the District Court denied the motion. After discovery, Bonnie moved for summary judgment. The District Court denied that motion, too. And then, at the close of Samuel's case, Bonnie moved for judgment as a matter of law. The District Court denied that motion as well.

The jury ultimately returned a verdict in Samuel's favor and awarded him $540,770.50 in damages. Bonnie then made a renewed motion for judgment as a matter of law and also moved for a new trial.

In her motions, Bonnie argued, among other things, that no reasonable juror could have found for Samuel because his testimony regarding Bonnie's forgery of the disputed signature was "plainly false." She also argued that the doctrine of judicial estoppel barred Samuel's claim with respect to the securities because he had not listed them in the sworn financial disclosures that he made during the proceedings for his divorce from Barbara.

The District Court denied both the motion for judgment as a matter of law and the motion for a new trial. The District Court also awarded Samuel prejudgment interest on the award of damages, after calculating that interest as accruing from the date on which he filed this lawsuit.

These appeals followed. In her appeal, Bonnie does not challenge the denial of her motion for a new trial, but she does appeal the denial of the motion for judgment as a matter of law.

In his cross-appeal, Samuel contends that the District Court's award of prejudgment interest was too low.

## II.

In her challenge to the denial of her motion for judgment as a matter of law, Bonnie makes a number of arguments that relate to Samuel's testimony about whether Bonnie forged his signature. Bonnie's first argument in this regard is that Samuel's testimony at trial that Bonnie forged the signature was so implausible that no reasonable juror could have credited the testimony.

The problem for Bonnie is that this challenge to the credibility of her father's testimony asks us to do precisely what we may not in reviewing the denial of a motion for judgment as a matter of law: re-weigh his testimony or re-assess its credibility. See Malone v. Lockheed Martin Corp., 610 F.3d 16, 19-20 (1st Cir. 2010) ("[W]e will evaluate neither the credibility of the witnesses nor the weight of the evidence." (citations and internal quotation marks omitted)).  We thus reject this aspect of her challenge.

Bonnie also argues, however, that she is entitled to judgment as a matter of law because the District Court committed evidentiary errors in permitting Samuel's testimony concerning her alleged forgery of his signature and that, without that improperly admitted testimony, Samuel had no case.  We may enter judgment as a matter of law in favor of the party who lost below if that party brings a successful evidentiary challenge and "on excision of

testimony erroneously admitted, there remains insufficient evidence to support the jury's verdict." Weisgram v. Marley Co., 528 U.S. 440, 457 (2000).  But the evidentiary challenges that Bonnie raises are meritless.

First, we reject Bonnie's contention that Samuel's testimony at trial about his familiarity with his daughter's handwriting must be struck because it directly conflicted with his deposition testimony that Samuel had no such familiarity.  She bases this contention on an unpersuasive analogy to the rule that "a party opposing summary judgment may not manufacture a dispute of fact by contradicting his earlier sworn testimony without a satisfactory explanation of why the testimony is changed." Rockwood v. SKF USA Inc., 687 F.3d 1, 12 (1st Cir. 2012) (quoting Abreu-Guzmán v. Ford, 241 F.3d 69, 74 (1st Cir. 2001)).

In this case, existing factual disputes had already justified the District Court's denial of Bonnie's motion for summary judgment.  And Bonnie acknowledges that, as the allegedly contradictory testimony about Samuel's familiarity arose at trial, we are outside the Rockwood rule.  She urges us, however, to extend its application to these circumstances.  We decline to do so, as the rule applicable once a trial has commenced is that "[a] party is free to contradict her deposition testimony at trial, although her opponent may then introduce the prior statement as impeachment."  Fine v. Ryan Intern. Airlines, 305 F.3d 746, 753

(7th Cir. 2002); cf. Fed. R. Civ. P. 32(a)(2); 2 McCormick On Evid. § 301 (7th ed.). In any event, Bonnie did not object at trial to Samuel's testimony that he was familiar with her handwriting. Thus, the conflict between trial and deposition testimony on this point provides no basis for reversal of the denial of the motion for judgment as a matter of law. See United States v. Henry, 519 F.3d 68, 74 (1st Cir. 2008) (no plain error when appellant had "not cited to any prior case law mandating -- or even directly supporting -- the relief that he requests").[3]

Second, we reject Bonnie's argument that Samuel's opinion about the putatively forged signature should have been excluded under Federal Rule of Evidence 901(b)(2). That rule allows introduction of "[a] nonexpert's opinion that handwriting is genuine, based on a familiarity with it that was not acquired for the current litigation."[4] Bonnie contends that Samuel's claimed familiarity with Bonnie's handwriting was "acquired for the current litigation" and was thus inadmissible. See Fed. R. Evid. 901(b)(2). But the record does not support that contention.

Samuel did not testify that he gained his familiarity with Bonnie's handwriting while preparing for trial. Rather, he

---

[3] Because we find that there was no plain error, we need not address the question whether the evidence would be sufficient to sustain the verdict even without Samuel's testimony.

[4] We have held that Rule 901(b)(2) applies to testimony of the type that Samuel gave. See United States v. Scott, 270 F.3d 30, 50 (1st Cir. 2001).

testified that he developed that familiarity based on both correspondence between himself and Bonnie and his review, over a three-month period, of the prescriptions Bonnie wrote in her practice as a podiatrist.

To be sure, on cross-examination, Samuel did reply "Yes" to the question from Bonnie's counsel: "In preparation for trial, meeting with your attorney, you've had an epiphany, an awakening, you've become aware of her signature now?" But that statement was not an admission by Samuel that he acquired his familiarity with Bonnie's handwriting in the course of preparing for trial. It was merely a purported explanation of his reason for giving at trial a different answer regarding his familiarity with her handwriting than he gave at his deposition. Thus, there was no error under Rule 901(b)(2) in permitting Samuel's testimony on that point.[5]

## III.

Bonnie makes one additional argument in support of her contention that the District Court erred in denying her motion for judgment as a matter of law. She contends -- as she did in that motion -- that Samuel's suit should have been dismissed on judicial estoppel grounds. We do not agree.

---

[5] To the extent that Bonnie argues that Samuel was not, in fact, sufficiently familiar with her handwriting to testify about it, that argument is also meritless. See Scott, 270 F.3d at 50.

The doctrine of judicial estoppel provides that "[w]here one succeeds in asserting a certain position in a legal proceeding, one may not assume a contrary position in a subsequent proceeding simply because one's interests have changed."  Guay v. Burack, 677 F.3d 10, 16 (1st Cir. 2012).[6]  Bonnie contends that this doctrine applies here because Samuel did not list the disputed securities in his sworn financial disclosures to the Massachusetts probate court during the proceedings regarding his divorce from Barbara. Bonnie contends that Samuel therefore should not be permitted to claim those securities as his own in this suit.

But the fact that Samuel did not list the securities in the divorce proceedings is not, in and of itself, dispositive of whether he may claim them in this case.  The District Court explained that judicial estoppel did not apply, in part, because Samuel's attorney testified in this case that he had advised Samuel during the divorce proceedings that the securities did not need to be listed in those proceedings.  See New Hampshire v. Maine, 532 U.S. 742, 753 (2001) ("[I]t may be appropriate to resist application of judicial estoppel when a party's prior position was

_____

    [6]  "Because judicial estoppel appears neither clearly procedural nor clearly substantive, there is a potential choice of law question of whether federal or state law should govern in this diversity action."  RFF Family P'ship, LP v. Ross, __F.3d__, 2016 WL 669393, at *4 n.5 (1st Cir. Feb. 18, 2016) (internal quotation marks omitted).  As the parties "both seem to assume the application of the federal law of judicial estoppel, we accept the parties' agreement without deciding the issue."  Id.

- 9 -

based on inadvertence or mistake." (internal quotation marks omitted)).

Our review of the District Court's decision is for abuse of discretion, see Rockwood, 687 F.3d at 10, and Bonnie makes no argument as to how the District erred in relying on the testimony of Samuel's attorney in declining to apply judicial estoppel. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). Nor does our review of the record reveal any basis for finding such an error. Because we affirm the District Court's ruling on this ground, too, Bonnie's appeal fails.

## IV.

We turn now to Samuel's cross-appeal, which challenges the amount of prejudgment interest that the District Court awarded. "When state-law claims . . . are adjudicated by a federal court, prejudgment interest is normally a matter of state law." In re Redondo Construction Corp., 678 F.3d 115, 125 (1st Cir. 2012). In tort actions, such as this one, Massachusetts law provides for prejudgment interest on the award of damages at a rate of 12 percent, with the interest accruing from the time the case is filed. Mass. G.L. c. 231 § 6B. And, in this case, the District Court awarded prejudgment interest, at a rate of 12 percent, beginning on March 22, 2011, the date Samuel filed suit, just as

§ 6B requires for tort actions generally.  Samuel argues, however, that because his tort claim is a claim for breach of fiduciary duty, this award was too low.

Samuel relies for that proposition on the Supreme Judicial Court's (SJC) recent decision in The Woodward School for Girls, Inc. v. City of Quincy, 13 N.E.3d 579 (Mass. 2014).  He argues in his briefs, solely on the strength of Woodward, that he is entitled to the 12 percent statutory rate of interest set forth in § 6B, but accruing from May 18, 2000, which he contends was the date of the fiduciary breach, rather than from March 22, 2011, which was the date on which Samuel filed suit.

In Woodward, the City of Quincy challenged a trial court ruling that had awarded prejudgment interest -- though at a rate much lower than the statutory rate set forth in § 6B -- from the time of the breach of a fiduciary duty to the beneficiary of a trust for which the city was the trustee.  See Woodward, 13 N.E.3d at 599.  The city contended that an award of interest accruing from that earlier date was impermissibly high because of § 6B, given that § 6B provides for the award of prejudgment interest only from the time of the filing of the suit and not from the time of the breach.  Id.

The SJC disagreed with the city.  The SJC explained that when a fiduciary breach occurs with regard to a trust, the beneficiary of the trust is entitled to be put in the positon the

- 11 -

beneficiary would have been in if no breach had occurred.  Id.
The SJC stated that, "[m]aking the beneficiary whole . . . may
require awarding interest beginning from the time of the breach,
such that the trust's assets resemble what they would have but for
the breach."  Id.

The SJC then clarified that "[i]n such circumstances,
the award of prejudgment interest is part and parcel of the award
of damages itself, and is not compensation for the delay of
litigation in the same sense as interest awarded under G.L. c.
231, § 6B."  Id.  The interest awarded that accrues during a time
period prior to the judgment (which need not be at the statutory
rate of 12 percent) is thus a measure of the damages the party
sustained by not realizing a given rate of return on the assets in
question.  See id.  Further, Woodward noted that awarding interest
from the time of the breach, as part of the damages, makes
particular sense in the case "where the breach stems from imprudent
investment decisions having an impact on the growth of the trust's
assets."  Id.

Given the nature of Samuel's contention in this case, it
is not entirely clear whether our review of the District Court's
prejudgment interest award should be de novo or for abuse of
discretion, cf. Analysis Grp., Inc. v. Cent. Fla. Inv., Inc., 629
F.3d 18, 24 (1st Cir. 2010), and neither party makes an argument
either way.  However, it appears that Samuel's sole contention --

that Woodward requires awarding interest at the statutory rate of 12 percent from the date of breach -- is a legal one that we review de novo.  See id.  And we discern no error in the District Court's ruling declining to grant Samuel that award even assuming that our review is de novo.

We reach this conclusion because Woodward did not hold that an award of interest -- whatever the rate -- from the date of fiduciary breach is required in every breach of fiduciary duty case in order to provide a make-whole remedy.  See Woodward, 13 N.E.3d at 599-600.  In fact, Woodward expressly stated to the contrary.  Id. at 600 n.37.  Moreover, in Woodward, the interest awarded to the plaintiff as part of the damages for the loss caused by the imprudent investments was not calculated at the 12 percent statutory rate.  Id. at 597-98, 599 n.36.  The interest awarded was calculated at a much lower rate that was selected to ensure a make-whole remedy in that particular case.  Id.  And that award was only given following a detailed, fact-intensive analysis of the effects of the imprudent investment decisions there at issue. Id.

Samuel now contends that, in a different sort of fiduciary breach case not involving imprudent investment decisions, Woodward requires interest to be awarded at the statutory 12 percent rate from the date of breach on top of the damages awarded.  And Samuel makes that contention because his

case involves a breach of fiduciary duty, too. But Samuel does not make any developed argument as to how Woodward plausibly supports the particular award of interest that he seeks. Rather, Samuel argues only that Woodward requires that award. But Woodward plainly does not hold that interest at the statutory 12 percent rate must be awarded from the time of breach in every -- or, indeed, any -- case of fiduciary breach.

Moreover, to the extent Samuel intends to argue that the District Court abused its discretion by rejecting the contention that he was entitled to at least some interest from the date of breach -- albeit at a rate other than the statutory rate of 12 percent -- that argument fails as well. Samuel did not ask the jury to award him greater prejudgment interest as part of his damages award; nor did he ask for an instruction regarding interest-based damages pursuant to Woodward. Rather, below, he merely cited to Woodward in a footnote in the proposed judgment attached to his Rule 58 motion that stated, in its entirety: "The Woodward School for Girls, 469 Mass. 151 ('Beneficiary was entitled to award of prejudgment interest from date of breach of fiduciary duty, rather than from date of the filing of the complaint. . .')." Accordingly, Samuel has done nothing to show that the District

Court abused its discretion in awarding him interest only in accordance with § 6B.  We therefore reject his challenge.[7]

## V.

For the foregoing reasons, the District Court's order and judgment are **affirmed**.

---

[7] In light of our holding, we need not address Bonnie's contention that because there was insufficient evidence to support the jury's finding of a resulting or constructive trust, Woodward is not applicable.